Ross *et al.* *vs.* The Central Railroad and Banking Company.

---

ALBERT B. ROSS, administrator, *et al.*, plaintiffs in error, *vs.* THE CENTRAL RAILROAD AND BANKING COMPANY, defendant in error.

1. If, in an action of ejectment, the defendant set up title by prescription, to-wit: seven years adverse possession under color of title, it is no reply to the defendant's case to show that the plaintiff has been "by fraud debarred or deterred from his action," unless it further appear that the defendant, or those whose adverse possession it is necessary he shall tack with his to make out his prescriptive title, have been guilty of or had knowledge of the fraud.

2. The limitation act of 1856, prescribing that no limitation shall run against an unrepresented estate unless the lapse exceed five years, as well as section 2688 of the Code providing substantially the same thing as to prescription, apply to the causes of action existing in favor of estates unrepresented at the time of the passing of the act of 1856, so far as to require the said estates to be represented within five years from the passage of said act.

WARNER, Chief Justice, dissented.

Ejectment. Prescription. Statute of limitation. Administrators and executors. Before Judge HILL. Bibb Superior Court. October Adjourned Term, 1873.

Reported in the opinions.

J. & J. C. RUTHERFORD, for plaintiffs in error.

LYON & IRVIN, for defendant.

McCAY, Judge.

1. The principal question in this case is the true construction of section 2688 of the Code, in those words of it which provide, among other exceptions to the statute of limitations, "cases of fraud debarring or deterring the other party from his action until the fraud is discovered." It is contended that if the plaintiff was deprived of his rights by fraud, no no matter by whom, that the statute never went against him, no matter who was in possession, until the fraud is discovered. That he, the plaintiff, stands as one under disability, as an infant, lunatic, and the statute does not run. On the other hand, it is contended, and so the court below decided, that the reply of fraud can only be made to the person guilty of the fraud, and that if the property has gone into the possession of one guiltless of any participation in the fraud, the statute runs in his favor from the date of his possession, no matter when the plaintiff may have discovered the original wrong. It is certainly a startling proposition insisted on by the plaintiff in error. It is simply this: that if one be deprived of his rights *by fraud,* that no length of time, no change of owner-

Ross *et al. vs.* The Central Railroad and Banking Company.

ship, no *bona fides* of new parties can ever bar the person wronged, or his heirs, until the fraud be discovered. To put a case: Suppose one, one hundred years ago, had been deprived of his rights by the spoliation of a will. So long as the fraud remains undiscovered, no matter what new parties, new interests and new rights may arise, the statutory bar never arises until the statutory period after the discovery of the fraud. It seems to me that this view of this section is utterly inconsistent with sections 2679 and 2683. Those sections expressly require the person setting up the prescription to have been *tinctured with the fraud,* or to have had *notice* of it, *at the time of his going into possession,* before they deny to his possession the character of being adverse. The construction of section 2688, as contended for, would make it depend entirely upon the *discovery* of the plaintiff, no matter how honest and *bona fide* the defendant may be, no matter how long his possession. The position is, that the person defrauded, and his heirs, are under *disability*, that they are *out* of the *statute*, by its express words, and that no matter how long the defendant, though entirely innocent, may have been in the open, avowed and notorious possession, he is not protected. So startling a proposition, one that unsettles *every title* in the state, requires a close examination. In my judgment such is not the meaning of the law makers. To state the proposition in other words, it is this: If the original wrong be a fraud, no matter by whom, if the plaintiff can say that the fraud has only been discovered within seven years, he is entitled to recover, no matter how long and no matter how honest the claim and the possession of the defendant may be. This section of the Code first came into our law by the act of 1856 : See acts of 1855 and 1866, pamphlet, page 236. In that act, as well as by the Code, the statute of limitations was made in terms to apply to courts of equity as at law, and it is just here, where, in my judgment, the error of those who give the statute the construction, that this provision puts the plaintiff upon the ground of being under *disability,* arises. The provision did not exist in the English statute of limitations, nor in our

Ross *et al. vs.* The Central Railroad and Banking Company.

act of 1767, and the subsequent acts, until 1856. It was a rule adopted by courts of chancery in England to regulate and limit their power to interfere. They were not bound by the statute of limitations. They, however, refused redress when the plaintiff's demand was a stale one, and they laid down the broad rule that a demand never became stale against one guilty of a fraud until the fraud was discovered.

It was not upon the ground that the plaintiff was under disability: Lord REDESDALE, in Hoveden *vs.* Lord Annesley, 2 Sch. and Lef. R., 634, lays down the rule and the reason of it as follows: "That the statute ought not in conscience to run; the conscience of the party being so affected that he ought not to be allowed to avail himself of the lapse of time." Judge STORY in the case of Pratt *vs.* Northam, 5 Mason Rep., 110, enunciates a similar doctrine. That was a case where an administrator had got into his hands, assets, bonds, etc., belonging to the intestate in England, which were not known by the heirs to have belonged to him, and the heirs had only lately discovered the fact, the administrator having made no return of such bonds, and fraudulently concealed, not only that he had them, but that they, in fact, existed. The suit was against the administrators of the security on his bond, and Judge STORY says: "It is said here is a case of fraud, and fraud constitutes, in equity, a good exception to the statutes of limitation. But then the fraud must be the fraud of the party setting up the bar of the statute. If this statute is to be avoided by any fraud it must be the fraud of the parties themselves, and not of third persons with whom they have no connection or privity. There is no pretence in this case of any fraud on the part of the testator of these defendants, the security." As I have said, the rule does not turn on the *disability* of the plaintiff, but on the fraud of the defendant. He, the guilty party, shall not be allowed to say that his own concealment of the plaintiff's rights shall work in his favor. And the very words of this section of the Code indicate this idea. It is not put or classed with *disabilities,* but under the head of exceptions, and the language is not

general in cases of fraud debarring the plaintiff, but debarring the *other party*, the party opposite to himself in the fraudulent transaction. For these reasons we think the charge of the judge was right. The defense of the plea of prescriptive right was good in the defendant and those under whom it claims without notice. The reply of fraud was only good in case the conscience of the defendant was affected by the fraud. It is not a case of disability in the plaintiff, but a case where the law says to the defendant, you shall not take advantage of your own fraud, unless the plaintiff has kept still seven years after its discovery.

2. We think, too, that the act of 1856, and the Code, setting the statute of limitations in operation against unrepresented estates on the lapse of five years, applied to cases then in existence. They come within the letter of the law, that is, if the statute be treated as beginning to run at the passage of the act, and there is no hardship or unfairness in so applying it. Such, too, has been the usual understanding of the act.

Judgment affirmed.

TRIPPE, Judge, concurred, but furnished no written opinion.

WARNER, Chief Justice, dissenting.

It appears from the record in this case that William Bond was the owner of a city lot in the city of Macon, and died in the possession thereof, leaving one child, Mrs. Kah, formerly Mrs. O'Connor, who had two children by O'Connor, her former husband, named William and Bridget. William died in 1860; Bridget intermarried with Dillard, and died in 1863. Bond, the father of Mrs. Kah, died in 1851. In September, 1852, Mrs. Kah conveyed the city lot in dispute, by deed, to Thompson. In 1859, Thompson conveyed the lot, by deed, to Blake. In 1869, Blake conveyed the lot, by deed, to Jones, and in December, 1869, Jones conveyed the lot, by deed, to the Central Railroad and Banking Company, the present defendant. Within a year or two after the death of Bond, Dillard, the husband of Bridget, who is now in life, took out

letters of administration on the estate of Bond, and sued Thompson for the lot. Thompson filed a bill to enjoin that suit, which was perpetually enjoined by the decree of the court, on the ground, we suppose, (though it does not affirmatively appear,) that he had purchased the lot from Mrs. Kah, the heir-at-law of Bond, and there were no debts of the deceased to be paid. Thompson, and those claiming under him, have been in possession of the lot since his purchase from Mrs. Kah. In 1869 or 1870, it was discovered, for the first time, that Bond left a will, the contents of which were duly proved, as well as the destruction thereof by Mrs. Kah, and a copy of the same was duly established by the court of ordinary of Bibb county, admitted to record, and Ross was appointed administrator with the will annexed, on the estate of William Bond, deceased. By the will of Bond the lot in dispute was devised to Bridget, the wife of Dillard. This suit was brought in the name of the plaintiff on the demise of Ross, the administrator of Bond, with his will annexed, and on the demise of Dillard, who was the husband of Bridget, the devisee under the will, against the defendant to recover the possession of the lot in dispute. The defendant claims title by prescription under the 2683d section of the Code. The evidence in the record is clear that Bond died leaving a will, by which he devised the lot in controversy to his grand-daughter, Bridget, the wife of Dillard; that shortly after the death of Bond, his daughter and only child, Mrs. Kah, destroyed the will by burning it; that she concealed the fact of there being a will and its destruction, from the devisee and her husband, Dillard, and everybody else, so far as the record shows, except Thompson, to whom she communicated the facts when he purchased the lot from her. There is no evidence that Blake, Jones or the defendant, had any notice of the fraudulent destruction of the will and concealment thereof, at the time of their respective purchases of the lot. This suit was commenced within less than seven years from the discovery of the fraud, and the question is, whether the plaintiff is barred of his right to recover the possession of the lot as against the de-

fendant? The defendant insists that it has a good title by prescription, as against the plaintiff, because it, Jones and Blake, have been in the adverse possession of the lot for more than seven years under written evidence of title, without notice of any fraud brought home to either of them. This may be all very well, so far as they are concerned, if the prescriptive title under which they claim had been running in their favor as against the plaintiff in this suit. But was it running in their favor as against him? Mrs. Kah had no title to the lot when she conveyed it to Thompson. Thompson conveyed none to Blake, nor Blake to Jones, nor Jones to the defendant. The title to the lot was in the devisee under Bond's will, and if there had been no statute of limitations or prescription, no one would question the plaintiff's right to recover the possession of the lot from the defendant, on the strength of his own title. If the plaintiff is *excepted* from the operation of the statute of limitations, or prescription, until the discovery of the fraudulent concealment and destruction of the will, then neither the statute of limitations or prescription, run against him in favor of the defendant.

Was the plaintiff in this case excepted from the operation of the statute of limitations, or prescription, until the discovery of the fraud? The 2931st section of the Code declares that if the defendant, or those under whom he claims, has been guilty of a fraud by which the plaintiff has been debarred or deterred from his action, the period of limitation shall run only from the time of the discovery of the fraud. The 2688th section declares that a prescription does not run in cases of fraud debarring or deterring *the other party* from his action, until the fraud is discovered. This section relating to prescription, it will be observed, does not restrict the fraud by which the plaintiff has been debarred or deterred from his action, to the fraud of the defendant, or those under whom he claims, but declares in general terms that a prescription does not run in cases of fraud debarring or deterring the other party from his action. The defendant claims the benefit of the prescription as running in its favor. The plaintiff is *the*

*other party,*.who, by the fraudulent concealment and destruction of the testator's will was debarred and prevented from all knowledge of his rights under it, and consequently was debarred and prevented from bringing his action to recover the same. If the facts disclosed in this record do not make a case of fraud within the words and meaning of the statute, which necessarily debarred and deterred the plaintiff from bringing his action to recover the possession of the lot devised by the testator's will, it is extremely difficult to say what would constitute a case of fraud, which would prevent the running of the statute as against a plaintiff claiming the benefit of the exception made by it in his favor. As already remarked, the 2688th section, in relation to a prescription not running in cases of fraud, is not confined to the fraud of the defendant and those under whom he claims, as declared in the 2931st section, but if it did, the defendant in this case claims title to the lot under Mrs. Kah, who was the actual perpetrator of the fraud, and under Thompson who had knowledge of it at the time he purchased the lot from her. The defendant has no other paper title to the lot except that which it derived under and through Mrs. Kah, who concealed and destroyed the will of her father in order that she might inherit his property as his heir-at-law. The fact that administration was taken out on Bond's estate in ignorance of the fraudulent concealment and destruction of his will, and the decree obtained by Thompson, who had knowledge of the existence of the will at the time, has no legal significance or effect whatever as to the rights of the devisee of Bond, under his will, even if the grant of administration by the ordinary on Bond's estate was not *void.* The devisee of Bond, under his will, was not a party to that proceeding, and is not bound by it, and none of the parties pretend to have derived their title to the lot under any *judicial sale* or order of any court. The title of the defendant is derived from Mrs. Kah, and she had none to convey. If the plaintiff had been an infant at the time of the commencement of the defendant's prescriptive title, it would hardly be contended, we suppose, that the prescription would

have run against him. Why not? Because he would have been *excepted* from the operation of the statute. Just so in this case, the prescription did not run in favor of the defendant as against the plaintiff, who is *the other party*, because of the fraud of Mrs. Kah in the destruction and concealment of the testator's will, which fraudulent act debarred and deterred him from his action until the fraud was discovered. The defendant cannot claim a prescriptive right to the lot except by the terms of the statute which confers that right. The question in this case, is not whether the defendant has had possession of the lot for seven years under written evidence of title and a *bona fide* claim of right, but *the* question is whether the defendant can claim a prescriptive title to the lot in dispute under the statute as against the plaintiff, who was debarred and deterred by fraud from instituting his action against the defendant to recover the possession of the lot until the fraud was discovered by him. The plaintiff being *excepted* from the operation of the statute under which the defendant claims its prescriptive title to the lot, therefore, no prescription ran in its favor as against the plaintiff until the discovery of the fraud by him. The defendant cannot claim the benefit of the statute of prescription for its protection, when that same statute expressly declares that it does not run in cases of fraud debarring or deterring the other party from his action until the fraud is discovered. The plaintiff in this case is the other party, and no prescription ran against him in favor of the defendant as to the possession of the premises in dispute until the discovery of the fraud. The defendant cannot claim a title by prescription under the statute, and at the same time *repudiate* that part of the same statute which declares in express terms, that prescription does not run in its favor, on the statement of facts disclosed by the record in this case. I am, therefore, of the opinion that the judgment of the court below should be reversed.